In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2331

Kenneth Sandstrom,

Plaintiff-Appellant,

v.

Cultor Food Science, Incorporated,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 97 C 8216--James F. Holderman, Judge.

Argued April 25, 2000--Decided May 25, 2000

  Before Posner, Chief Judge, and Easterbrook
and Evans, Circuit Judges.

  Easterbrook, Circuit Judge.  American
Xyrofin, a manufacturer of food
additives, was sold, merged, and
reorganized early in 1996, with
predictable consequences for some of its
executives. Cultor U.S. Inc. acquired
Xyrofin in January 1996 and renamed the
new subsidiary Cultor Food Science (cfs).
Soon Cultor Limited (the parent of Cultor
U.S.) bought another food additives group
from Pfizer, Inc., and merged this
business into cfs. As part of the
acquisition, Cultor promised Pfizer that
it would give Pfizer employees who joined
cfs but later lost their jobs benefits
tracking those of the severance-payment
plan that Pfizer maintained under the
Employee Retirement Income Security Act
(erisa). When in March 1996 cfs ended the
employment of Violeta Velasco, who came
from Xyrofin (which lacked a severance-
benefit plan), it offered her a severance
package: six weeks' pay, plus one
additional week's pay for each year she
had been employed by Xyrofin, both
doubled if she signed a release of any
legal claims against cfs. Toward the end
of March cfs decided that the services of

Kenneth Sandstrom, Velasco's supervisor, also were no longer necessary. Sandstrom, unlike Velasco, was not offered a severance package. He filed this suit under sec.502(a)(1)(B) of erisa, 29 U.S.C. sec.1132(a)(1)(B), contending that the offer to Velasco demonstrated that cfs had an "informal plan for severance benefits" that applied to him too. The district court disagreed and granted summary judgment for cfs. 1999 U.S. Dist. Lexis 6525 (N.D. Ill. Apr. 26, 1999).

Briefs filed in this court dwell on two questions: whether Sandstrom has produced evidence from which a reasonable trier of fact could conclude that cfs "intended" to establish an "informal" (which is to say, unwritten) severance-benefit plan and, if so, whether the terms of that plan are sufficiently definite to support a remedy. They debate, for example, whether Barton Finegan, the vice president of human resources who approved the offer to Velasco, had authority to establish a plan on behalf of cfs. They also explore whether the Velasco offer sets out the terms of the plan or whether, instead, these terms may be found elsewhere-- perhaps in a check sent to Velasco (which gave her one week's pay in addition to what the offer promised) or perhaps in the (written) plan for employees cfs inherited from Pfizer. This plan had a 13-week base plus triple the week's-pay-per-prior-year if the employee signed a release. Nor can the parties agree on whether the "informal plan" afforded benefits in lieu of notice (so that an employee who remained on the payroll after notice of termination would have severance benefits reduced by the number of weeks of employment yet to go) or was on top of whatever wages the employee earned. If cfs created a plan by making an offer to Velasco, did it amend or abolish the plan by not making a similar offer to Sandstrom? These are enigmas, which exemplify a deeper problem that the parties have not mentioned: does erisa contemplate unwritten plans? None of these uncertainties would exist if the plan were on paper.

Several of our cases say that it is possible to have an unwritten pension or welfare-benefit plan under erisa, if the plan is "a 'reality,' which requires . . . that the court be able to determine 'whether from the surrounding

circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.'" James v. National Business Systems, Inc., 924 F.2d 718, 720 (7th Cir. 1991), quoting from Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). See also Diak v. Dwyer, Costello & Knox, P.C., 33 F.3d 809, 811-12 (7th Cir. 1994); Ed Miniat, Inc. v. Globe Life Insurance Group, Inc., 805 F.2d 732, 738-39 (7th Cir. 1986). It is not clear that the approach taken in Dillingham is compatible with more recent decisions of the Supreme Court, which emphasize different considerations when asking whether an informal policy or arrangement is a "plan." See Massachusetts v. Morash, 490 U.S. 107 (1989); Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987). Both Morash and Ft. Halifax evince reluctance to find that regular and predictable awards of severance or vacation payments establish a "plan," given the frequency with which these benefits are the subject of bilateral negotiations between employers and departing employees. But we need not pursue this subject, because cfs had an express plan, which did not cover Sandstrom.

Written plans may be altered only in writing. Statements by plan administrators, side agreements and understandings, or even special offers made to many of a firm's employees, do not change the contents of the plan applicable to other employees. See, e.g., Central States Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148 (7th Cir. 1989) (en banc); Frahm v. Equitable Life Assurance Society, 137 F.3d 955, 960 (7th Cir. 1998); Central States Pension Fund v. Joe McClelland, Inc., 23 F.3d 1256 (7th Cir. 1994). Likewise, statements or conduct by bureaucrats implementing a plan do not estop the employer to enforce the plan's written terms, and although we have not barred the door we have made it clear that only extreme circumstances (not yet seen) justify estoppel. See, e.g., Shields v. Teamsters Pension Plan, 188 F.3d 895 (7th Cir. 1999); Plumb v. Fluid Pump Service, Inc., 124 F.3d 849, 856 (7th Cir. 1997); Schoonmaker v. Employee Savings Plan of Amoco Corp., 987 F.2d 410 (7th Cir. 1993).

These decisions are fatal to Sandstrom's position, for his claim must be that cfs amended its formal plan (the one applicable only to former Pfizer employees) by making the offer to Velasco. Yet that is not the means erisa contemplates for plan amendments. See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73 (1995). Sandstrom evidently believes that erisa forbids bilateral deals between an employer and individual employees, so that the offer to Velasco must be a manifestation of a generally applicable "plan." Our opinion in Frahm rejects that position, holding that bilateral arrangements are compatible with erisa and do not modify the plan applicable to other employees who did not receive the offers or estop the employer to enforce the plan's written terms. 137 F.3d at 957-58. See also McNab v. General Motors Corp., 162 F.3d 959 (7th Cir. 1998). Accord, Sprague v. General Motors Corp., 133 F.3d 388, 403 (6th Cir. 1998) (en banc). Sandstrom was not entitled to severance benefits under the terms of the Pfizer acquisition, so the judgment of the district court is

affirmed.