In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-2090

MICHAEL J. VALLONE, JOYCE E.
HEIDEMANN and JAMES J. O'KEEFE,

*Plaintiffs-Appellants,*

*v.*

CNA FINANCIAL CORPORATION, a/k/a
CNA CASUALTY OF ILLINOIS, and THE
CONTINENTAL INSURANCE COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 98 C 7108—**James B. Moran**, *Judge.*

ARGUED NOVEMBER 6, 2003—DECIDED JULY 15, 2004

Before CUDAHY, MANION and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* This case involves another
episode in the widespread efforts of corporations to reduce
their liabilities by cutting back on retiree benefits. The law
in this circuit is well-established, but this does nothing to
cushion the hardship of pensioners faced with a new drain
on their limited resources.

In late 1991, The Continental Insurance Company
(Continental) offered an early retirement package to some

of its employees as a cost containment initiative. Michael J. Vallone, Joyce E. Heidemann and James J. O'Keefe (collectively, the plaintiffs) are three of the 347 Continental employees who accepted the early retirement package (the early retirees), which included the "lifetime" welfare benefit at issue in this case, a Health Care Allowance (HCA). In 1995, Continental was acquired by CNA Financial Corporation (CNA). In 1998, CNA notified the early retirees that as of January 1, 1999, their HCA benefit would be terminated. The plaintiffs challenged this decision by complaining to the Plan Administrator of CNA's retirement plan, to no avail. They subsequently brought suit, alleging claims of wrongful denial of benefits under the Employee Retirement Income Security Act (ERISA), breach of contract, estoppel and a breach of fiduciary duty. The district court granted summary judgment to the defendants on all claims, and we now affirm.

## I.  Background

### A.  Factual and Legal Background

In November 1991, Continental offered a Voluntary Special Retirement Program (VSRP) to its employees who had 85 years of combined age and service (with minima of 55 years of age and 10 years of service). The VSRP included a monthly Health Care Allowance (HCA), a welfare benefit that was offered to all retirees. However, the HCA benefit offered as part of the VSRP differed from the HCA benefit available to regular retirees. It is the nature of this difference that is at issue here. Accompanying the VSRP were explanatory materials, some of which the plaintiffs claim expressed Continental's intent to vest the HCA benefit, and others which CNA claims did just the opposite. The potential early retirees were also told, both orally and in writing, that the HCA benefit would be a "lifetime benefit." The plaintiffs are three of the 347 Continental employees who

accepted early retirement under the VSRP in early 1992. Continental was acquired by CNA in 1995.

All went smoothly until August 1998, when CNA notified the early retirees that their HCA benefit would be eliminated as of January 1, 1999. The plaintiffs complained by telephone to CNA officials and were told that the Plan Administrator's decision was appropriate and final. Believing they had no practical recourse under the administrative appeal procedures made available to them by the general retirement plan, the plaintiffs sued CNA in a purported class action on behalf of Continental employees who elected to retire under the VSRP, bringing claims of violation of § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) for wrongfully failing to pay benefits (Count II), breach of fiduciary duty in violation of § 404 of ERISA, 29 U.S.C. § 1104 (Count III), breach of ERISA and common law bilateral contracts (Count IV) and promissory estoppel (Count V).[1]

Two other putative class members, Bernard A. Serek and Thomas L. Jones, had submitted written appeals to CNA's Plan Administrator, in which they argued that the VSRP documents created a contract or entitlement that prohibited unilateral termination of their HCA benefits. Serek and Jones received substantially the same response as did the plaintiffs. Because Serek and Jones had exhausted their administrative claims, the district court found that the plaintiffs were excused on grounds of futility from the requirement that they exhaust their own administrative claims. (Appellants' Short Appx., Memorandum Op. and Order 11/10/99 (11/10/99 Order) at 7-8.) However, because the plaintiffs had not themselves complied with the administrative review procedures, the district court was un-

---

[1] Count I, which was essentially redundant of Count II, was withdrawn by the plaintiffs.

willing to allow them to "start from scratch in federal court." (Appellants' Short Appx., Memorandum Op. and Order 5/16/00 (5/16/00 Order) at 4.) Thus, purportedly on the basis that the evidence relevant to evaluating a Plan Administrator's discretionary decision to deny benefits is limited to those materials available to the Plan Administrator, the district court (at least initially) stayed discovery on all of the plaintiffs' claims and limited its review to the administrative record of Serek's and Jones's complaints. *Id.* at 4-5. Broader discovery was later allowed with respect to the fiduciary duty claim, though summary judgment was granted to CNA on the other three claims. (Appellants' Short Appx., Memorandum Op. and Order 12/28/00 (12/28/00 Order) at 3 n.3, 13.) The district court eventually granted summary judgment to CNA on the fiduciary duty claim as well. (Appellants' Short Appx., Memorandum Op. and Order 3/28/03 (3/28/03 Order) at 7.)

The plaintiffs now appeal the district court's decision to limit discovery to the administrative record on three of its claims and from its grant of summary judgment on all counts. CNA appeals the district court's decision to widen the scope of discovery with respect to the plaintiffs' breach of fiduciary duty claim, though this would matter only if we were to reverse the district court's grant of summary judgment on that claim.

## B.  Documents and Oral Representations

The retirement package in this case involves a complicated construction of enhancements to the general retirement plan in effect at the time. Not surprisingly, the parties disagree about which documents (and oral representations) created the VSRP and its enhanced HCA benefit at issue here. Continental's general retirement plan documents—which (together with their reservations of rights clauses) CNA argues are part of the VSRP— include

the 1990 Comprehensive Health Care and Dental Plan of the Continental Corporation (1990 Plan) (R. 109-1, ex. 1), Your Benefits in 1991 (1991 General Summary Plan Description (SPD)) (R. 109-1, ex. 4), A Guide for Benefits for Employees Considering Retirement During 1991 (1991 Retirement Guide) (R. 109-1, ex. 6), A Guide for Employees Considering Retirement During 1992 (1992 Retirement Guide) (R. 109-1, ex. 7), and Retiree Benefits in 1991 (1991 Retiree SPD) (R. 109-1, ex. 8). Additionally, between the time the plaintiffs (and other early retirees) complained about the termination of their HCA benefit and the time the Plan Administrator rendered his decision on the formal appeals of other early retirees, CNA amended the 1990 Plan and created the 1996 Continental Insurance Company Retiree Group Medical and Dental Plan (1996 Plan) (R. 109-1, ex. 3), which became effective in October 1998. Continental also supplied the early retirees with several documents at the time it solicited their participation in the VSRP. These documents (the VSRP Documents) include a covering memorandum dated November 21, 1991 (VSRP Covering Memo) (R. 109-2, ex. 9), A Brief Description of the Voluntary Special Retirement Program (Brief Description Newsletter) (R. 109-2, ex. 12), the 1992 Retirement Guide, a personalized calculation worksheet (R. 109-2, ex. 10), a payment election form (R. 109-2, ex. 11), an acceptance/rejection form (R. 109-2, ex. 13) and a retiree benefit elections form (R. 109-2, ex. 14).

Continental is also alleged to have made oral representations to the potential early retirees regarding the nature of the HCA benefit. During group and individual meetings that took place in late 1991 between Continental's human resources representatives and eligible employees in various locations around the country, the HCA was consistently

described as a "lifetime" benefit.[2] Heidemann, who was an assistant vice president of human resources for the Great Lakes region and an officer of the company at the time of her retirement, testified at deposition that she had been told by her superiors in human resources that the HCA benefit was a "lifetime" benefit. (R. 118-2, tab 1, Heidemann dep. at 145, 164.) She could not recall anyone ever telling her that the VSRP benefits were irrevocable. *Id.* at 147. She strongly believed the VSRP was separate and distinct from the general retirement plan, and since no one in human resources ever told her the benefits *could* be revoked, *id.*, and none of the documents specifically discussing the VSRP contained a disclaimer, *id.* at 163, 218-19, she assumed that the "lifetime" benefits were irrevocable. When Heidemann presented the VSRP to the eligible employees in her region (including Vallone), she represented the benefits as being for "your lifetime" but did not say anything about their irrevocability. (R. 118-2, tab 2, Vallone dep. at 77-79, 82.)

The district court, from the perspective of the evidence most favorable to the plaintiffs, determined that eligible employees were told that the benefits were for their own and their spouses' lifetimes; that they were not told the benefits could be changed or revoked (although they were referred to documents that reserved those rights); that they

---

[2] CNA disputes that any formal meetings were scheduled and claims that Heidemann conducted group meetings in her region on her own initiative. (Appellees' Br. at 14-15.) CNA moreover argues that the plaintiffs submitted 23 legally defective affidavits of other early retirees claiming they also attended meetings in other parts of the country during which the HCA benefit was described as "lifetime." *Id.* at 17. We need not decide whether these affidavits were defective or not, nor whether additional meetings occurred or not, because, as we point out later, CNA admits that the HCA benefit was a "lifetime" benefit for all retirees, and the plaintiffs have not claimed that they were ever told explicitly that the HCA benefit could not be terminated or altered.

were not told the "lifetime" benefits were irrevocable, but they nevertheless concluded that the benefits were irrevocable for reasons similar to Heidemann's reasons; that this conclusion was material to their decision to retire; that Continental had no intention at the time of the plaintiffs' retirement of altering the HCA benefit; and that the intention and decision to change benefits came several years later, after Continental had been acquired by CNA. (3/28/03 Order at 6.) We find that these factual determinations are reasonable and are supported by the record, but we would add that although Continental may not have had any intention of terminating the early retirees' benefits, it did know that under ERISA its plan documents allowed it to do so.

## II.  Discovery Issues

The district court initially stayed discovery with respect to all of the plaintiffs' claims, limiting its review to only those materials considered by the Plan Administrator at the time he denied Serek's and Jones's written claims for benefits. (5/16/00 Order at 4.) The record could, however, be augmented (upon motion of the plaintiffs) by any written materials germane to the interpretation of the VSRP and the Plan that were not contained in the administrative record. *Id.* at 4-5. The plaintiffs never made such a motion. Later, the district court allowed the plaintiffs to pursue expanded discovery on their fiduciary duty claim. (12/28/00 Order at 3 n.3.) Of course, neither party is content with the district court's handling of discovery, which just proves the truth of the old saw: if you try to please everybody, you end up pleasing nobody.

We review a district court's decisions on discovery matters for abuse of discretion. *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995). A court does not abuse its discretion "unless one or more of the following circumstances is present: (1)

the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000), quoting *Gile v. United Airlines*, 95 F.3d 492, 495 (7th Cir. 1996). Moreover, "[w]e will not reverse the court's decision absent a clear showing that the denial of discovery resulted in actual and substantial prejudice to the complaining litigant." *Searls*, 64 F.3d at 1068.

The standard of review of a Plan Administrator's decisions regarding benefits depends on whether the Plan Administrator was given the discretion to make those decisions. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 980 (7th Cir. 1999) ("Decisions of ERISA plan administrators presumptively receive *de novo* review, but if the plan establishes discretionary authority then review will be deferential.") (citations omitted). As we explain in more detail below, CNA's Plan Administrator had sufficient discretion that our review of his decision to deny benefits on the basis that there was no contract vesting benefits must be deferential. And "[d]eferential review of an administrative decision means review on the administrative record." *Id.* at 981-82. Thus, with respect to the early retirees' claims for wrongful denial of benefits and breach of ERISA and common law contract, the district court correctly limited discovery to the complete administrative record since the Plan Administrator's decision to deny benefits was based on a determination that the HCA benefits could be terminated or altered because they were not vested (i.e., because no contract existed that vested the plaintiffs' HCA benefits).

However, the plaintiffs' estoppel claim, which the district court limited to the same record for the same reason, is not actually an appeal of a decision of the Plan Administrator. An estoppel claim requires (among other things) a knowing

misrepresentation—generally in writing—here alleged to be Continental's representation to the potential early retirees that the HCA benefits would be vested when Continental knew they could be terminated or modified. In reviewing Serek's and Jones's appeals, the Plan Administrator did not make any finding whether the equities of the situation required CNA to honor any non-legally-binding representations it may have made that the benefits were vested. Thus, since the estoppel claim is not a review of a decision of the Plan Administrator, the district court erred in limiting discovery to the administrative record with respect to the estoppel claim.

Notwithstanding the district court's error, its decision to limit the record with respect to the plaintiffs' estoppel claim is harmless, because the plaintiffs never asserted or demonstrated prejudice. Even after being allowed additional discovery on their fiduciary duty claim, the plaintiffs have pointed to nothing—oral or written—that the district court's limitation prevented it from considering. Rather, the plaintiffs argue, citing *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir. 1993) (en banc), that unspecified "extrinsic evidence" should have been allowed to "explain what was intended under the VSRP and what was promised to the [early retirees] as an inducement to retire." (Appellants' Br. at 25.) The district court, which ultimately found that oral representations were irrelevant to the plaintiffs' estoppel claim because the documents were not ambiguous, specifically allowed the plaintiffs to move to augment the administrative record with any "written materials germane to the interpretation of the VSRP and the Plan" which they learned of that were not already included. (5/16/00 Order at 4-5.) The plaintiffs never made any such a motion. Since the plaintiffs do not tell us what "extrinsic evidence" the district court failed to consider due to limitations on the record, and since the district court seems to have considered all relevant evidence in the entire record (all written documents

purporting to relate to the VSRP and/or the general retirement plan, as well as Continental's oral and written representations that the HCA benefits were "lifetime"), the plaintiffs fail to demonstrate any prejudice, even after being invited to do so by CNA in its brief.

From another direction, CNA challenges the district court's decision to *expand* the record with respect to the fiduciary duty claim (12/28/00 Order at 3 n.3), even though the district court eventually granted summary judgment in its favor in the face of the augmented record. CNA argues that the district court erred in permitting the plaintiffs to take discovery beyond the record with respect to their fiduciary duty claim, and that the Plan Administrator's discretion requires that review be limited to the administrative record as it was for the other claims. However, the breach of fiduciary duty is alleged to have occurred when oral misrepresentations were made to the potential early retirees at the time they were considering whether to take the VSRP package and, as such, their claim does not involve a decision of the Plan Administrator. For that reason, there was no need to limit review of the fiduciary duty claim to the administrative record, and the district court did not abuse its discretion to allow additional discovery.[3]

---

[3] Moreover, we note that although there are many more decisions reviewing a district court's *denial* of discovery than decisions reviewing a *grant* of discovery, apparently the requirement that prejudice be shown applies equally to parties aggrieved by a grant of discovery as by a denial. *See, e.g.*, *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904, 907 (4th Cir. 1978) (reviewing a grant of discovery, court held that "[g]ranting or denying a request under rule 34 is a matter within the trial court's discretion, and it will be reversed only if the action taken was improvident and affected substantial rights."), quoting *Tiedman v. American Pigment Corp.*, 253 F.2d 803, 808 (4th Cir. 1958); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice

(continued...)

### III.  Substantive Issues

On December 28, 2000, the district court granted CNA's motion for summary judgment on the plaintiffs' claims of wrongful denial of benefits under ERISA (Count II), breach of ERISA and common law contract (Count IV) and equitable estoppel (Count V). On March 28, 2003, the district court granted CNA's motion for summary judgment on the plaintiffs' one remaining count, their breach of fiduciary duty claim (Count III). We review the district court's grants of summary judgment de novo. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 475 (7th Cir. 2004). To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, "we draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Williamson v. Ind. Univ.*, 345 F.3d 459, 462 (7th Cir. 2003).

### A.  ERISA Violation for Failure to Pay Benefits (Count II)

### 1.  Standard of review applicable to Plan Administrator's decisions

First, we must determine the appropriate standard for

---

[3]  (...continued)

& Procedure (3d ed. 1998) § 2006 ("A discovery order can always be reviewed on appeal from a final judgment in the case, even though it is difficult at that stage to show that the party has been prejudiced by the order . . . , and the harmless-error doctrine, together with the broad discretion the discovery rules vest in the trial court, will bar reversal save under very unusual circumstances.") (footnotes omitted). CNA, like the plaintiffs, fails to demonstrate how it was prejudiced by the district court's decision to expand discovery on the fiduciary duty claim.

reviewing the decisions of the Plan Administrator. Ordinarily, "[a] denial of benefits will be reviewed de novo 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Militello v. Cent. States, Southeast & Southwest Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If the plan's language "indicates with the requisite if minimum clarity that a discretionary determination is envisaged," *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000), "then a denial of benefits will be reviewed under an arbitrary and capricious standard." *Militello*, 360 F.3d at 685 (citing *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)).

The district court neatly sidestepped the question whether the provisions of the 1990 Plan or the provisions of the 1996 Plan were in effect at the time the benefits were denied. It did so by finding that the language in the 1990 Plan "indicate[s] with sufficient clarity that the Plan Administrator has the discretionary authority to interpret the Plan" and that, if anything, the 1996 Plan (which was adopted between the time the plaintiffs complained about the termination of the HCA benefit and the time the Plan Administrator responded to those complaints) "confers discretionary authority on the Plan Administrator even more clearly." (12/28/00 Order at 5 & n.5.) Thus, under either Plan, the arbitrary and capricious standard applies. We agree that it is unnecessary to determine which of the two Plans controls, because in addition to the district court's correct determination that the 1990 Plan conferred sufficient discretion on the Plan Administrator and that the 1996 Plan expanded it, the fact is that it doesn't matter which Plan controls or which standard of review is applicable. For the ultimate issue is whether the benefits were vested. If the benefits were vested, the denial of benefits

would be wrongful even under an arbitrary and capricious standard; and if the benefits weren't vested, the denial of benefits would be lawful even under a de novo standard. We now proceed to the merits.

**2. Analysis**

As they argued in the district court, the plaintiffs maintain that under the VSRP, which they believe was separate and distinct from the general retirement plan, they received a vested "lifetime" HCA benefit, and the Plan Administrator therefore violated ERISA when he terminated their HCA benefit. The district court rejected this argument by noting that employers are free to amend or terminate welfare benefits, which do not vest absent a showing of clear intent to vest in written plan documents. The VSRP was a modification of the general retirement plan (and the 1992 Retirement Guide was specifically incorporated into the VSRP). Hence, the reservation of rights clauses in the general retirement plan documents became part of the VSRP. The district court further found that the Brief Description Newsletter, which described the VSRP's enhanced benefits, did not create an ambiguity because the plaintiffs' interpretation of language in the Newsletter as vesting the HCA benefit (i.e., guaranteeing that the HCA benefit amount would never be reduced) was not reasonable.

We start from the premise that "[e]mployers . . . are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). For this reason, if ERISA welfare benefits "vest at all, they do so under the terms of a particular contract." *Pabst Brewing Co. v. Corrao*, 161 F.3d 434, 439 (7th Cir. 1998). The Supreme Court, followed by several courts of appeals, has indicated that a modification that purports to vest welfare benefits must be contained in the plan documents and must be

stated in clear and express language. *See Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515 (1997); *Frahm v. Equitable Life Assurance Soc'y*, 137 F.3d 955, 958 (7th Cir. 1998) (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1988) (en banc) as sensibly extending the requirement of a writing to all long-term commitments); *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 855-56 (4th Cir. 1994); *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993). Given our presumption against the vesting of welfare benefits, silence indicates that welfare benefits are not vested. *See Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 544 (7th Cir. 2000) ("Our presumption against vesting, it is important to emphasize, kicks in only if all the court has to go on is silence."). Moreover, although ERISA itself "[left] open . . . the possibility that a written plan may be combined with an oral promise, such as an undertaking to give a worker twice the benefits so established," wholly oral promises cannot be used to require the employer to provide irrevocable benefits. *Frahm*, 137 F.3d at 958. If there is some ambiguity in the language of the written agreement that is not disambiguated elsewhere in the document, only then may we consider evidence of the parties' intent that is "extrinsic" to the written documents, such as oral representations. *See Rossetto*, 217 F.3d at 547; *Bidlack*, 993 F.2d at 609.

### a.   The "lifetime" nature of the HCA benefit

The plaintiffs claim that all of the VSRP's enhanced benefits were vested, including the HCA, and that the HCA cannot be "carved out" of the VSRP package of vested retirement benefits. This contention is easily disposed of since the HCA benefit differs qualitatively from the VSRP's other enhanced benefits: it is a welfare benefit, as the

plaintiffs concede (Appellants' Br. at 22-23), not a pension benefit. Thus, absent language expressly indicating that the HCA benefit is vested, it would not vest upon retirement.[4]

The plaintiffs argue that the VSRP documents indicate that the HCA is a "lifetime" benefit, and that this had been confirmed in oral representations made to them. Specifically, they assert that the personalized calculation worksheet, which states that eligible employees will receive an HCA allowance of $465 per month to age 65 and $180 per month thereafter, indicates that this benefit is "for life." (R. 109-2, ex. 10.) The payment election form, which prescribes the same HCA allowance amounts as appear on the personalized calculation worksheet and which allows eligible employees to choose to have their surviving spouses receive the HCA benefit after their death, is also offered for the implication that the benefits were for life (and even beyond). (R. 109-2, ex. 11.)

That the HCA benefit was a "lifetime" benefit—both for regular retirees and for retirees who accepted the VSRP package—is actually conceded by CNA. (Appellees' Br. at 27; 1992 Retirement Guide at 6.) The problem for the plaintiffs is that "lifetime" may be construed as "good for life unless revoked or modified." This construction is particularly plausible if the contract documents include a reservation of rights clause (which, as will be shown, is the case here). *See UAW v. Rockford Powertrain, Inc.*, 350 F.3d 698, 704 (7th Cir. 2003) ("We must resolve the tension between the lifetime benefits clause, and the plan termination and

---

[4] As we discuss in more detail below, the characterization of a benefit as "lifetime" can, absent a reservation of rights clause, indicate that the benefit is vested. However, the packaging of a welfare benefit with pension benefits does not on its own alter our presumption against vesting in the absence of express language to the contrary.

reservation of rights clauses, by giving meaning to all of them. Reading the document in its entirety, the clauses explain that although the plan in its current iteration entitles retirees to health coverage for the duration of their lives and the lives of their eligible surviving spouses, the terms of the plan—including the plan's continued existence—are subject to change at the will of [the employer]. The health insurance section of the plan description unambiguously does not provide the plaintiffs with vested lifetime health insurance benefits.") (internal citations omitted); *Diehl v. Twin Disc*, 102 F.3d 301, 307 (7th Cir. 1996) ("[W]hen potentially conflicting provisions coexist . . . within a single contract formed of several documents, the rule that contractual provisions be read as parts of an integrated whole will lead a court to seek an interpretation that reconciles those provisions."); *see also In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 904 (3d Cir. 1995) ("An employer who promises lifetime medical benefits, while at the same time reserving the right to amend the plan under which those benefits were provided, has informed plan participants of the time period during which they will be eligible to receive benefits provided the plan continues to exist."); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1512 n.2 (10th Cir. 1996) ("[T]he weight of case authority supports the *Unisys* approach, that a reservation of rights clause allows the employer to retroactively change the medical benefits of retired participants, even in the face of clear language promising company-paid lifetime benefits."). As laypersons, the plaintiffs' confusion on this issue is understandable; it is also very unfortunate, if it was a basis for their accepting the VSRP package. But in the perhaps beady eyes of the law, the "lifetime" nature of a welfare benefit does not operate to vest that benefit if the employer reserved the right to amend or terminate the benefit, given "what it takes to overcome the presumption that welfare benefits do not vest, combined with [our] reluctance to interpret a contract as being at war with itself." *Diehl*, 102 F.3d at 307.

It is true that some of our decisions have indicated that the use of "lifetime" to denote the duration of benefits may create an ambiguity and is not tantamount to silence (with its presumption against vesting). *See id.* at 306 (finding that separate agreement containing entitlement to lifetime benefits modified reservation of rights clause incorporated from another agreement and entitled retirees to welfare benefits for their lifetime); *Bidlack*, 993 F.2d at 608 ("But the agreements are not silent on the issue; they are merely vague. They say that once retired employees reach the age of 65 the company will pick up the full tab for their health insurance and that when they die their spouses will continue to receive supplemental health benefits, again at the company's cost. This could be thought a promise to retired employees that they and their spouses will be covered for the rest of their lives."). However, none of those decisions involve situations where a reservation of rights clause is an integral part of the contract that provides the "lifetime" benefits. In *Diehl*, we found that the contract providing "lifetime" benefits "was an independent contract, supported by separate consideration and capable of modifying or supplanting prior contractual arrangements," such as the one that contained the reservation of rights clause. *Diehl*, 102 F.3d at 306-07. Here, the nature of the HCA as a "lifetime" benefit is not one of the enhancements created by the VSRP because the HCA is also a "lifetime" benefit for regular retirees according to the general retirement plan documents. Thus, unlike *Diehl*, the "lifetime" nature of the HCA benefit could not abrogate the reservation of rights clause included in the 1992 Retirement Guide and other general retirement plan documents because both were offered by the same contract. Moreover, the reservation of rights clause in *Diehl* provided an "unsure foundation of the putative right to discontinue" benefits. *Id.* at 308. The use of "lifetime" with respect to the VSRP's HCA benefit simply does not operate to vest that benefit for the early retirees. In *Bidlack*, the only reservation of rights clause applicable

to the plan at issue was in a contract between the employer and an insurance company for the purchase by the former of health insurance sold by the latter. *Bidlack*, 993 F.2d at 606. We specifically found that clause inapplicable to the contract between the employees and the employer as to duration of benefits, the main issue in that case. *Id.* Thus, *Bidlack* did not involve the situation here where "lifetime" benefits were granted by the employer while the right to terminate or modify them was reserved. We have held that, when "lifetime" benefits are granted by the same contract that reserves the right to change or terminate benefits, the "lifetime" benefits are not vested. *See Rockford Powertrain*, 350 F.3d at 704.

The plaintiffs additionally argue that the Brief Description Newsletter's heading, "No reductions in the Retiree Health Care Allowance" indicated that the HCA benefit levels could not be altered. (Brief Description Newsletter at 2.) However, the paragraph accompanying that heading shows that no such promise was made. The paragraph reads:

> The maximum Retiree Health Care Allowance is earned at age 62 after 25 years of service as an active employee. If you retire under the Voluntary Special Retirement Program, you will be credited with the maximum Retiree Health Care Allowance, even if you have less than 25 years of service or are under age 62."[5]

---

[5] We note, as an aside, that although "earned" might seem to connote "vested," the two are distinguishable (though related) concepts. In the context of claims to benefits related to a break in service, the Second Circuit has noted that

> "[a]ccrued" benefits refer to those normal retirement benefits that an employee has earned at any given time during the course of employment. 29 U.S.C. § 1002(23)(A); *see generally*
> (continued...)

*Id.* With respect to the plaintiffs' contention here, we agree with the district court that the "plaintiffs' interpretation of the provision is not the most sensible one." (12/28/00 Order at 8-9.) In context, the heading in the Brief Description Newsletter refers to and rejects the reduced benefit amounts that would otherwise apply if an employee who does not meet the age and service requirements retires under the general retirement plan.[6] Thus, the VSRP's enhancement to the regular retirement plan's HCA benefit was to ensure that the early retirees qualified for the maximum HCA amounts; it was not, and could not reasonably have been construed as, a promise to vest the HCA benefit at that maximum level for the remainder of the early

---

[5]  (...continued)
> *Esden v. Bank of Boston*, 229 F.3d 154, 162-63 (2d Cir. 2000). "Vested" benefits, on the other hand, refer to those normal retirement benefits to which an employee has a "nonforfeitable" claim; in other words, those accrued benefits he is entitled to keep. 29 U.S.C. § 1002(19).

*McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 156 (2d Cir. 2003). Moreover, we have held that "'[a]ccrued benefit' . . . has been interpreted to include retirement benefits and to exclude 'ancillary benefits not directly related to retirement benefits' like insurance or disability benefits." *Heinz v. Cent. Laborers' Pension Fund*, 303 F.3d 802, 804-05 (7th Cir. 2002), *aff'd*, 2004 U.S. LEXIS 4028 (U.S. June 7, 2004). Thus, while the use of "earned" as applied to the maximum HCA benefit level might indicate poor drafting, it does not here indicate an intent to vest.

[6]  The plaintiffs may have recognized this in their Statement of Undisputed Material Facts In Opposition to the Defendant's Second Motion for Summary Judgment. (*See* R. 117 at 5, ¶ 19 ("The VSRP retirees were entitled to receive the maximum Retiree Health Care Allowance even if they had less than 25 years of service or were under the age of 62. This benefit was not offered under the general retirement plan.").)

retirees' lives. The plaintiffs' insistence to the contrary is unsupportable.

### b. Reservations of rights clauses

The plaintiffs next argue that, as a separate and distinct program, the benefits in the VSRP were not subject to the reservations of rights clauses in the various general retirement plan documents, and that the documents specifically mentioning the VSRP did not contain reservation of rights clauses. However, regardless of how the plaintiffs believe the VSRP was marketed to the early retirees, their initial premise that the VSRP was separate and distinct from the general retirement plan is incorrect. This is evident from a review of the Brief Description Newsletter, which repeatedly refers to the general retirement plan in discussing the VSRP's enhanced benefits, making clear that the general retirement plan is the baseline program to which the VSRP's enhancements would be made.[7] The plaintiffs

---

[7] We note four references in the three page document. (Brief Description Newsletter, R. 109-2, ex. 12.) On page 1, it states, "the Retirement Plan's benefit formula for accruing your retirement allowance usually is a percentage of your average final pay over the last five years, multiplied by your years of service, but reduced if you want to retire before age 62. Under the [VSRP], the following enhancements will apply." On page 2, it states that "[u]nder the Retirement Plan, your allowance is normally reduced . . . . But if you elect to retire through the [VSRP], these reduction factors will not apply." Later on the same page, it states, "[i]n addition to these changes, we have already announced an expansion of the Retirement Plan's definition of pay." And on page 3: "In addition to the enhanced retirement benefits that are described above . . . ." Moreover, the VSRP would fail to qualify as an ERISA retirement program if it were comprised solely of the documents that specifically mentioned the VSRP and did not take

(continued...)

themselves admit that the VSRP was a modification of the regular retirement plan. (Appellants' Br. at 32.) We also note that if the plaintiffs were correct that the VSRP was comprised only of those documents that specifically mentioned the VSRP, it would lack such fundamental prerequisites as administrative procedures and descriptions of the very benefits being offered.

Moreover, the Covering Memo specifically incorporated the 1992 Retirement Guide and its reservation of rights clause. The Covering Memo stated that "[r]etirement means a major change in lifestyle for most people, and you'll need to weigh the pros and cons carefully. The enclosed materials are intended to help you arrive at the right decision for you." (Covering Memo at 1.) One of the enclosed documents was the 1992 Retirement Guide, which eligible employees were told "provides information about the benefits available to you during retirement and highlights the decisions you need to make regarding those benefits." *Id.* Continental thus unambiguously stated in writing that the 1992 Retirement Guide, which included a reservation of rights clause, was part of the VSRP program and contained information about retirement benefits under the VSRP, including Continental's reserved right to alter or terminate those benefits. The reservation of rights clause appears in a box near the bottom of the last page of the 15-page document: "The coverages described in this Guide may be amended, revoked or suspended at the Company's discretion at any time, even after your retirement. No management representative has the authority to change, alter or

---

[7] (...continued) as its baseline the general retirement plan's terms, procedures and benefit descriptions. *See* 29 U.S.C. §§ 1102(a)(1), 1024(a)(1) (requiring employee benefit plans to be governed by written plan documents filed with the Secretary of Labor).

amend these coverages."[8] (1992 Retirement Guide at 15.)
Although the plaintiffs argue that this reservation of rights
clause on its face applies to "the coverages described in this
Guide" and that the VSRP was not mentioned in the 1992
Retirement Guide, we noted earlier that the "lifetime"
nature of the HCA benefit *was* set out in the 1992 Retire-
ment Guide and that the HCA benefit's "lifetime" nature
was not one of the VSRP's enhancements.

Although the 1992 Retirement Guide (with its applicable
reservation of rights clause) was part of the VSRP, along
with, as will be shown, the 1990 Plan and the annual SPDs
available at the time the VSRP was offered, it is worth
addressing CNA's argument that the lack of any reserva-
tions of rights clauses in the documents that mention the
VSRP amounts to silence (with its presumption against
vesting). If the benefits were not "*lifetime*" benefits, CNA
would be correct. But, as we noted in *Rossetto v. Pabst
Brewing Co.*, "[i]f there is language in the agreement to
suggest a grant of lifetime benefits, and the suggestion is
not negated by the agreement read as a whole, the plaintiff
is entitled to a trial." *Rossetto*, 217 F.3d at 547; *see also
Abbruscato v. Empire Blue Cross & Blue Shield*, 274
F.3d 90, 98 (2d Cir. 2001) (vacating district court's grant of
summary judgement in plan's favor because "lifetime" life
insurance benefits in early retirement plans "are ambiguous

---

[8]  Even if the general retirement plan documents were inapplic-
able to the VSRP, the omission of a reservation of rights clause
from the documents mentioning the VSRP would not necessarily
operate to waive CNA's right to terminate or modify the HCA,
which is an ERISA welfare benefit. *See, e.g.*, *Gable v. Sweetheart
Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994) (citing *Wise v. El Paso
Natural Gas Co.*, 986 F.2d 929, 938 (5th Cir. 1993) (holding that
"silence" as to an employer's right to modify the plan does not
"impliedly cede the right to later amend or discontinue cover-
age")).

and susceptible to interpretation as a promise of vested benefits" where neither of the early retirement plans "contain unambiguous reservation of rights clauses"); *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001) (where no reservation of rights clause was present, "[s]uch 'lifetime' language, we believe, is sufficient to create a triable issue of fact as to whether Empire promised to vest retiree life insurance benefits at the stated level."). Thus, if the plaintiffs had been correct that the reservation of rights clauses in the general retirement plan documents did not apply to the VSRP, the grant of "lifetime" benefits would have created an ambiguity allowing them a trial and allowing us to examine extrinsic evidence of the parties' intent. However, since we determined that this was not the case, there is no ambiguity requiring an examination of extrinsic evidence. *See Rockford Powertrain*, 350 F.3d at 704 ("The health insurance section of the plan description unambiguously does not provide the plaintiffs with vested lifetime health insurance benefits. Therefore, we need not resort to extrinsic evidence to interpret the contractual obligation between the parties.").

Finally, the plaintiffs argue that language in the 1990 Plan authorized the vesting of their retirement benefits in such a way that the reservation of rights clause in the 1990 Plan, which they concede was "the controlling document in existence at the time that the putative class elected to accept the VSRP plan" (Appellants' Br. at 23), allowed the benefits to be changed or terminated only *prior* to their retirement.[9] For this proposition, the plaintiffs seize upon

---

[9] The 1990 Plan incorporates by reference the Plan's annual SPDs and "any changes announced in writing to Employees or to Retired Employees before the beginning of the calendar year, for the year in which the services are rendered." (1990 Plan § 4.2, at 15.) The 1990 Plan is the umbrella ERISA plan under which the

(continued...)

the following language: "However, no such amendment or termination shall diminish or eliminate any claim for a benefit under the Plan to which a participant shall have become entitled prior to such amendment or termination, as applicable." (1990 Plan § 8.1, at 30.) But this argument presumes the very things the plaintiffs are trying to prove: that upon their retirement, the early retirees became entitled to their retirement benefits, which could not be diminished or eliminated by later amendments. As we have already explained, welfare benefits, unlike pension benefits, do not vest upon retirement. And the reservation of rights clauses contained in the 1992 Retirement Guide and other general retirement plan documents, which were applicable to the VSRP, allow amendment or modification of retirement benefits even after retirement. Thus, there was no entitlement to the HCA benefit on a going-forward basis. *See Hackett v. Xerox Corp.*, 315 F.3d 771, 774 (7th Cir. 2003) (analyzing language in a benefits plan similar to the language here and holding that "[r]ights to benefits do not accrue prospectively"). The language at issue here prevented CNA from amending its retirement plan to require retirees to pay back HCA allowances already paid out, or retroactively terminating coverage for a claim to medical benefits to avoid paying such a claim. The reservations of rights clauses, on the other hand, allow CNA to *prospectively* alter or amend its welfare benefits offered to retirees, even after retirement, and that is what it did.

---

[9] (...continued)
general retirement plan as well as the VSRP were both created. As the controlling document at the time the plaintiffs elected to accept the VSRP plan, we find that its reservation of rights clause also applies to the VSRP. In addition, since the SPDs are incorporated by reference into the 1990 Plan, any reservation of rights clauses in the SPDs available to the early retirees at the time the VSRP was offered are also applicable to the VSRP.

**B. Breach of ERISA and Common Law (Bilateral) Contract (Count IV)**

The district court unsurprisingly had difficulty distinguishing this purported contract claim from the plaintiffs' claim that they were wrongfully denied ERISA benefits.[10] As with denial of benefits claims, claims that a contract vested retirement benefits require that the vesting be done in writing, not orally. *See Frahm*, 137 F.3d at 958 ("Although . . . a written plan may be combined with an oral promise, such as an undertaking to give a worker twice the benefits so established—the utility of reducing retirement promises to writing and avoiding arguments about who said what to whom are so fundamental to both ERISA and contract law that an extension of the writing requirement to all long-term commitments is an inescapable ingredient of the federal common law slowly accumulating in ERISA's shadow."). As we have noted, the HCA benefit at issue was not vested in writing, so no bilateral contract was created that vested the HCA benefit.

Although we need not discuss CNA's argument that the plaintiffs' bilateral contract claim is duplicative of its denial of benefits claim under ERISA, we note that claims by a beneficiary for wrongful denial of benefits (no matter how they are styled) have been held by the Supreme Court to "fall[ ] directly under § 502(a)(1)(B) of ERISA, which

---

[10] We note in this regard that the plaintiffs merely incorporated their arguments made in support of their wrongful denial of ERISA benefits claim and did not add any separate legal or factual arguments. (Appellants' Br. at 36-37.) Moreover, the plaintiffs characterize their wrongful denial of benefits claim in Count II as an "ERISA Contractual Claim," *id.* at 27, quote from a decision involving interpretation of a written ERISA contract, *id.* at 28-29, and discuss the issue using contractual language such as "bargained . . . in consideration for," *id.* at 27, and "offered and accepted," *id.* at 32.

provides an exclusive federal cause of action for resolution of such disputes." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987). Recent decisions of both this circuit and the Supreme Court have held that state law claims, such as the plaintiffs' breach of common law contract claim here, are pre-empted by ERISA. *See Aetna Health Inc. v. Davila*, 2004 WL 1373230, at \*10 (U.S. June 21, 2004) ("Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim."); *Klassy v. Physicians Plus Ins. Co.*, 2004 WL 1326717, at \*4 (7th Cir. June 15, 2004) ("ERISA provides a remedy for plan participants wrongfully denied benefits. However, such claims must be brought under ERISA and creatively pleading a denial of benefits claim as a state law claim does not defeat the broad preemptive force of ERISA."). Thus, even if we had found that a written agreement vested the HCA benefit, the breach of common law contract claim would be pre-empted by ERISA § 502(a), while the breach of ERISA contract claim is duplicative of Count II, as is evident from the plaintiffs' briefs on appeal. It is appropriate to disallow a breach of common law contract claim here because plaintiffs should not be allowed to bring a denial of ERISA benefits claim in the guise of a common law breach of contract, thereby ensuring de novo review and no limitations on the record even if (as here) the plan administrator had the discretion to determine that no contract vested benefits and that benefits could therefore legally be terminated.

## C.  Estoppel (Count V)

In order to prevail on an estoppel claim under ERISA, we ordinarily require that plaintiffs show (1) a knowing mis-

representation; (2) that was made in writing; (3) with reasonable reliance on that misrepresentation by them; (4) to their detriment. *See Coker v. TWA*, 165 F.3d 579 (7th Cir. 1999). However, we have found an exception when plan documents are ambiguous or misleading, in which case oral representations as to the meaning of the documents may be relevant. *See Bowerman v. Wal-Mart Stores*, 226 F.3d 574, 588 (7th Cir. 2000). The district court found that exception inapplicable here—a finding that is not contested by the plaintiffs—and decided the issue on the basis that the plaintiffs unreasonably relied on the representation that the HCA benefit was a "lifetime" benefit as meaning that it was also a vested benefit. Their reliance was unreasonable given that the general retirement plan documents, to which the plaintiffs were referred, contained "numerous, unambiguous provisions reserving CNA's right to amend, suspend, or terminate the health care subsidy." (12/28/00 Order at 13.) As a guideline for the boundaries of ERISA estoppel, we have emphasized the "narrow scope" of estoppel claims and have noted that "only extreme circumstances" justify such claims. *Sandstrom v. Cultor Food Science*, 214 F.3d 795, 797 (7th Cir. 2000); *Coker*, 165 F.3d at 585.

In their brief on appeal, the plaintiffs argue that there is a material question of fact whether a promise made to them in writing that their HCA benefit would not be terminated, referring specifically to the heading in the Brief Description Newsletter stating that there would be no reduction in the HCA benefit. But this estoppel claim fails for two reasons. First, the plaintiffs have not shown a knowing misrepresentation of fact. Although "[r]epresentations about plans and intentions could be false if, at the time the statements were made, the speaker actually had a different intention," *Frahm*, 137 F.3d at 961, the district court found that, at the time the VSRP was offered, Continental had no intention of terminating the "lifetime" HCA benefit. Moreover, the plaintiffs have pointed to no false statements about whether

the HCA benefit could be terminated, and the district court's uncontested finding that the early retirees were not told explicitly that the "lifetime" benefits were irrevocable is therefore dispositive. The fact that the benefits were "lifetime" was not a misrepresentation; as we have discussed, the plaintiffs' confusion stems from their erroneous (though understandable) equation of "lifetime" with "vested."

Second, the plaintiffs cannot show reasonable reliance. We agree with the district court that, even if there were material written misrepresentations as to the nature of the HCA benefit, the plaintiffs unreasonably ignored the reservations of rights clauses in the general retirement plan documents that put them on notice that the HCA benefit could be terminated or modified. The plaintiffs argue that "[a]ll of the benefits were packaged in a single plan," which justified their reliance on the alleged representation that "the VSRP and all of its entitlements would not be terminated." (Appellants' Br. at 38.) However, not only were no representations made that benefits would not be terminated or altered, but, as we explained earlier, the packaging of a welfare benefit (such as the HCA) with pension benefits does not by itself make the welfare benefit a vested benefit.

## D.  Breach of ERISA Fiduciary Duty (Count III)

ERISA requires a trustee or other fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). In interpreting this statute, the Supreme Court has held that an employer breaches its fiduciary obligation by lying to employees in order to induce them to surrender their benefits. *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996). The plaintiffs point us to decisions from the Second, Third and Sixth Circuits which have supported claims for breach

of fiduciary duty on similar facts. The Second Circuit, which has given the broadest scope to ERISA fiduciary duty claims, has held that representing to plan participants that a plan's benefits are "lifetime" when they are not vested can create a genuine issue of material fact as to whether misrepresentations were made or whether there was a failure to provide complete and accurate information. *Abbruscato*, 274 F.3d at 102-03. The Third Circuit has held that a fiduciary duty claim could proceed, despite the employer's reservation of the right to terminate retirement benefits, when oral and written representations were made to employees that the benefits would continue for life and the employer was aware that retirement decisions were being based on the mistaken assumption that the benefits were also vested. *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1266-67 (3d Cir. 1995). And the Sixth Circuit has held that a breach of fiduciary duty claim was made out where a company—both of its own accord and in response to specific employee inquiries—misrepresented to employees that a reservation of rights clause in the plan did not allow retirement benefits to be changed when the legal effect of the clause was precisely the opposite. *James v. Pirelli*, 305 F.3d 439, 455-56 (6th Cir. 2002).

In this circuit, a breach of fiduciary duty exists if fiduciaries "mislead plan participants or misrepresent the terms or administration of a plan." *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993), *quoted in Bowerman*, 226 F.3d at 590. "Although not every error in communicating information regarding a plan will be found to violate a fiduciary's duty under ERISA, we have made clear that fiduciaries must communicate material facts affecting the interests of plan participants or beneficiaries and that this duty to communicate exists when a participant or beneficiary 'asks fiduciaries for information, and even when he or she does not.'" *Bowerman*, 226 F.3d at 590 (citations omitted). However, in *Frahm*, we found that

advice to employees stressing the availability of "lifetime" benefits without any qualifiers indicating that the employer reserved the right to change or terminate the benefits was not a breach of fiduciary duty. *Frahm*, 137 F.3d at 959. As we noted in *Frahm*:

> Some readers must have mentally added the word "unreduced" after a word such as "lifetime." Yet unless § 1104(a)(1) is a guarantor of accurate information at all times and for the indefinite future—unless it creates not only a duty of care, but also a duty of prevision—then claims that one or another bit of advice was misleading do not violate this statute.

*Id.* at 959-60. We also found in *Frahm* that "[t]he district court's finding that [the employer] did not set out to deceive or disadvantage plan participants therefore forecloses plaintiffs' claim under § 1104(a)(1)." *Id.* at 960.

Although the plaintiffs attempt to distinguish *Frahm*, the bases upon which they draw distinctions are irrelevant. The plaintiffs assert that *Frahm* did not involve a claimed ambiguity in the documents, but rather, conflicting evidence about what representations were made to plaintiffs. But the need to address the claimed ambiguity does not detract from the relevance to the plaintiffs' situation of *Frahm*'s legal conclusions, and the plaintiffs don't explain why *Frahm*'s legal conclusions are irrelevant. The plaintiffs also assert that, contrary to the district court's finding, there *was* a "campaign of disinformation" here as in *Varity*. If this were correct, that would indeed serve to distinguish *Frahm*, but there is no evidence of any intent to purposefully mislead employees. Rather, our conclusion that Continental fulfilled its duty of loyalty with respect to the potential early retirees is supported by the district court's finding that at the time the VSRP was offered, Continental had no intention of eliminating the "lifetime" HCA benefit in the future. The plaintiffs characterize Continental's

failure to explain, expressly and clearly, that the HCA benefit could be altered or terminated—just like the other welfare benefits offered to all retiring Continental employees—as "an intentional failure to warn VSRP participants" that Continental or a future merger partner could terminate the HCA at any time (Appellants' Br. at 34), and, even more egregiously, as "a concerted effort by CNA to remain silent about the HCA termination potential, in order to achieve its goals of maximizing retirements" (Appellants' Br. at 36). But just because Continental wanted as many of its eligible employees as possible to accept the VSRP does not mean that it purposefully violated its duty of loyalty by failing to provide an explicit warning when the necessary information was already in the early retirees' hands. If anything, the failure to provide an explicit warning is just as easily explainable by non-actionable negligence as by a disloyal intent, and in that sense, *Frahm* is on all fours. *See Frahm*, 137 F.3d at 959 ("[S]lipups in managing any complex enterprise are inevitable, and negligence—a violation of the duty of care— is not actionable."). In this respect, it is significant that the reduction of retiree welfare benefits in the face of rising health care costs is generally a relatively recent development, and warning of that possibility only recently became important. *Cf. Bidlack*, 993 F.2d at 613-14 & n.3 (Cudahy, J., concurring) (noting that the idea that retiree health benefits could be granted on anything less than a "lifetime" basis was a fairly recent development and that a presumption that silence indicated vesting was probably more in keeping with the parties' expectations at the time the agreement at issue was made).

The district court was correct that *Frahm* demonstrates a narrower interpretation of *Varity* than exists in other circuits. Specifically, while there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable. *See Frahm*, 137 F.3d at 959. That is why the employer must have set out to disadvan-

tage or deceive its employees, as in *Varity*, in order for a breach of fiduciary duty to be made out. *See id.* at 960. Here, there is no evidence that Continental purposefully intended to confuse plan participants by "packag[ing] the HCA with pension incentives" when "[t]hey knew that welfare benefits can be terminated, yet they never warned the retirees." (Appellants' Br. at 35.) For one thing, Continental's general retirement plan also "packaged" pension benefits with welfare benefits. We believe that this is a common practice, and we cannot find that it evinces an intent to confuse or deceive on Continental's part. For another, as we have already noted, the mere fact that pension and welfare benefits are part of the same retirement package does not mean, up to this point at least, that employers are required to warn employees that the welfare benefits, unlike the pension benefits, are terminable. As we have repeatedly held, silence indicates that welfare benefits are not vested, *see Rossetto*, 217 F.3d at 544, and we have not limited these holdings to retirement plans containing only welfare benefits. Thus, the lack of a specific warning that welfare benefits are terminable would not alone create a breach of fiduciary duty. There is simply no evidence that Continental set out to deceive its employees by its actions, and the district court therefore correctly found that the plaintiffs' claimed breach of fiduciary duty fails under *Frahm*.

In fact, it is not even clear that the information provided was inaccurate. As we found earlier, the general retirement plan documents containing reservation of rights clauses were made part of the VSRP by the documents setting out the VSRP's enhancements. There was no evidence that any employee ever specifically asked about the irrevocability of the HCA benefit, that Continental falsely indicated to any employee that the HCA benefit was irrevocable or that Continental was aware that the early retirees were coming to the mistaken conclusion that "lifetime" equated to

"vested." And in this circuit, if accurate written information is provided, as it was here, then the plaintiffs are unfortunately out of luck. *See Kamler v. H/N Telcom. Servs.*, 305 F.3d 672, 682 (7th Cir. 2002), *cert. denied*, 2003 U.S. LEXIS 2536 (U.S. Mar. 31, 2003); *Librizzi v. Children's Mem. Med. Ctr.*, 134 F.3d 1102, 1305 (7th Cir. 1998). In law, the inclusion of reservation of rights clauses in an agreement accurately conveys that benefits may be altered or terminated. Thus, the plaintiffs' fiduciary duty claim fails.

## IV.  Conclusion

This story does not have a happy ending. What this case comes down to, in the end, is the distinction between "lifetime" and "vested" welfare benefits—a legal distinction that understandably escaped many of Continental's employees who elected to take early retirement under the VSRP. It is also a distinction that, as we have pointed out above, only relatively recently became important. But now this legal distinction has indeed become an important one, because the lack of a writing that expressly vests the "lifetime" HCA benefit combined with Continental's reservation of the right to terminate benefits means that the plaintiffs' claims of wrongful denial of benefits, breach of contract and estoppel must fail. As for the plaintiffs' fiduciary duty claim, we agree with the district court's observation that, in hindsight, Continental would have better served its employees by proactively clarifying its intent with respect to the HCA benefit during the time its employees were deciding whether to take early retirement under the VSRP. Its failure to do so has left the plaintiffs, and undoubtedly many other long-time former Continental employees, feeling betrayed. However, we also agree with the district court that, at least in this circuit, Continental's failure is not actionable as a breach of fiduciary duty. For the foregoing

reasons, the district court's grant of summary judgment to the defendants on all of the plaintiffs' claims must be

AFFIRMED.


A true Copy:

   Teste:


   _____
   *Clerk of the United States Court of
   Appeals for the Seventh Circuit*