In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1320

IN RE:

BENTZ METAL PRODUCTS COMPANY, INC.,

Debtor-Appellee,

APPEAL OF:

LARRY FAEHNRICH, et al.,

Plaintiffs-Appellants,

v.

BENTZ METAL PRODUCTS COMPANY, INC., and
BANK ONE, INDIANA, NATIONAL ASSOCIATION,
a national banking association, as
successor to NBD BANK, N.A.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 99-C-449--William C. Lee, Chief Judge.

Argued April 11, 2001--Decided June 7, 2001


  Before FLAUM, Chief Judge, and BAUER,
POSNER, COFFEY, EASTERBROOK, RIPPLE, MANION,
KANNE, ROVNER, DIANE P. WOOD, EVANS, and
WILLIAMS, Circuit Judges.

  EVANS, Circuit Judge.  Indiana law
broadly protects the rights of workers
("mechanics and laborers employed in or
about any shop, mill, wareroom,
storeroom, . . . bridge, reservoir, . . .
drainage ditch . . . or any other earth-
moving operation . . . ." in the
charming, though antiquated, language of
the old Hoosier statute) against losing
wages due when an employer encounters
tough economic times. It does so by
moving workers to the front of the
company's creditor queue with a
mechanic's lien that trumps the rights of
other creditors to the company's assets.
Today we consider whether that lien,
established under Indiana Code sec. 32-8-
3-1 et seq., protects unionized workers
to the same extent it undoubtedly
protects the rights of nonunionized

workers. We find that it does, a determination that compels us to overrule In re Bluffton Castings Corp., 186 F.3d 857 (7th Cir. 1999).

The 20 employee-plaintiffs in this suit are members of the United Automobile, Aerospace and Agricultural Implement Workers of America, Local 2298, and as such they are parties to a collective bargaining agreement with their employer, the Bentz Metal Products Company, Inc., of Fort Wayne, Indiana.

In 1996 an involuntary bankruptcy petition under 11 U.S.C. sec. 303 was filed against Bentz. While the bankruptcy was pending, the employees filed liens under Indiana law seeking to secure unpaid vacation pay owed to them under the CBA. Everyone agrees that unpaid vacation pay, like other employee fringe benefits, is treated the same as unpaid wages, and the parties have stipulated that the amount owed the employees is $12,700.38. The employees filed an adversary proceeding in bankruptcy court to determine the validity and priority of their liens. They named Bentz and its secured creditor, now Bank One, as defendants. Relying on our decision in Bluffton Castings, which is directly on point, the bankruptcy court quite naturally held that sec. 301 of the Labor Management Relations Act of 1947 (29 U.S.C. sec. 185(a) preempted the liens. The district court affirmed.

Graced with astute legal representation, the employees appealed, candidly acknowledging that what they were asking us to do was reconsider a ruling which a panel of the court recently issued. In this instance, they have convinced us to take this unusual step. Unusual, but not unheard of. It is well-established that on rehearing en banc, the full court may, and sometimes does, overrule a decision reached earlier by a three-judge panel in a separate case. See Mojica v. Gannett Co., 7 F.3d 552 (7th Cir. 1993) (en banc).

Two intertwined reasons compel the result we reach today. First, our examination of the relevant cases shows that this issue requires case-by-case factual analysis to determine the extent to which a state law claim will require interpretation of a CBA. The second is we

believe that the controlling legal principle is stated too broadly in Bluffton Castings.

In Bluffton Castings the issue was, in part, whether a claim based on the same Indiana mechanic's lien statute at issue here was preempted under sec. 301. The panel, relying on language in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 410 n.10 (1988), concluded that it was. That language is that "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" From this, the panel derived two alternative conditions under which preemption would result:  "either because it depends on interpretation of a CBA or because the claim is founded on the CBA." Bluffton Castings, at 862. In what we conclude was too broad a reading of the phrase, the panel held that the mechanic's lien claims were "founded on the CBA" and thus preempted. We now hold, consistent with Lingle and Livadas v. Bradshaw, 512 U.S. 107 (1994), that a state law claim is not preempted if it does not require interpretation of the CBA even if it may require reference to the CBA.

Since Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448 (1957), it has been clear that sec. 301 expresses a policy that the substantive law to apply in sec. 301 cases is federal law, which courts were directed to fashion from the policy of national labor laws. The preemptive effect of sec. 301 was first explored in Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962), a case involving a claim for violating a collective bargaining agreement. The guiding principle behind sec. 301 preemption was that a contract should not have different meanings under federal law and the laws of various states. Today, it is well-understood that a claim for breach of a collective bargaining agreement is preempted. But in other cases, not based directly on a CBA, the scope of preemption continues to cause some bewilderment. The Supreme Court itself has noted, "We are aware . . . that the Courts of Appeals have not been entirely uniform in their understanding and application of the principles set down in Lingle and Lueck [Allis Chalmers Corp. v.

Lueck, 471 U.S. 202 (1985)]." Livadas, at 124 n.18. The Court, however, declined, at that time, to make it clearer.

So we must do our best. While preemption is a strong federal policy, Congress has not exercised authority to occupy the entire field of labor legislation, and it did not explicitly declare the extent to which it intended sec. 301 to preempt state law. What has become clear is that preemption can extend beyond contract disputes to other state law claims if resolution of those claims is sufficiently dependent on an interpretation of a CBA. In Lueck, a claim based on the Wisconsin tort of bad faith in the handling of an insurance claim was preempted because the claim was substantially dependent on the interpretation of a CBA. Two years later, the Court made the statement relied on in Bluffton Castings: that sec. 301 governs claims "founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987), (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)). But the Supreme Court has often cautioned that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by sec. 301 or other provisions of the federal labor law." Lueck, at 211.

Then in Lingle, a claim based on the Illinois tort of retaliatory discharge was found not to be preempted:  "[W]e hold that an application of state law is pre-empted by sec. 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." At 413. More recently, in Livadas, the Supreme Court said that a claim based on a California wage payment penalty statute should have been allowed to proceed even though the amount of the claim might be determined under the collective bargaining agreement. The mere need to look to the CBA for damage computation was said to be no reason to hold the state-law claim defeated by sec. 301. The issue is whether a state law conflicts or interferes with federal law. These principles were applied in a case

under the Railway Labor Act, in which a state wrongful discharge was allowed to proceed. Saying the standard under the RLA was "virtually identical" to that in LMRA cases, the Supreme Court again cautioned that sec. 301 cannot be read broadly to preempt rights conferred on individual employees as a matter of state law. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246 (1994). The principles set out in these cases, as other courts have noted, are sometimes easier to mouth than to apply, see, e.g., Foy v. Pratt & Whitney Group, 127 F.3d 229 (2nd Cir. 1997), involving as they do, claims reaching far beyond those clearly founded on rights created by CBAs--for instance, those for breach of a collective bargaining agreement.

In our case, as in Bluffton Castings, the employees' rights to the monies due, and the precise amount, depend on the collective bargaining agreement. Here, that sum is undisputed. Nevertheless, it remains true that the entitlement to the money due is laid out in the CBA. If entitlement or the amount due were seriously in dispute, as to these questions interpretation of the CBA would be necessary and would be resolved in the appropriate way--arbitration followed by confirmation, or a direct 301 suit in federal court if arbitration is not called for in the CBA. But whether the amount due is resolved, as here, by stipulation, or whether it is resolved through procedures set out in the CBA, the contract issues are separate from the claim the employees presented to the bankruptcy court. Once the contract issues are resolved, the employees can present their separate claim in bankruptcy for priority based on the Indiana mechanic's lien statute. The priority among creditors in a bankruptcy proceeding is not dependent on a CBA. It is not something which a collective bargaining agreement can or does dictate. No amount of interpretation of a CBA and no arbitrator's decision would, independent of the state law lien, compel a bankruptcy court to let employees jump ahead of a bank in the money line, which brings us to some interesting sidelights.

One is that the controversy before us is not between employee and employer, as is most often the case when sec. 301 preemption is an issue. In reality, this

case does not involve an employee suing the employer (even though the employer is a named defendant). Here, a third party--the bank--is presenting a vigorous defense of federal labor policy. That defense, though, turns the policy behind federal labor laws on its head. What the bank really is arguing is that the employees' collective bargaining agreement with their employer should be used to benefit the bank at the employees' expense.

The other issue we consider a sidelight is whether preemption somehow depends on whether the state law provides a benefit which is nonnegotiable or whether it is negotiable and waivable. The bank makes the argument that if a right is subject to negotiation or waiver, it is preempted. The logic apparently is that if the parties can negotiate over an item, then whether, in fact, there was negotiation or not, the union members do not retain the benefit of the state law. According to the bank, the mechanic's lien is subject to waiver and therefore preempted. We do not think it is that simple, even if this lien is waivable--a point on which we offer no opinion.

It is true that there is language in the cases about negotiability and waiver. Livadas says that both Lueck and Lingle say that sec. 301 does not broadly preempt "nonnegotiable rights conferred on individual employees as a matter of state law." At 123. Or, stated a bit more positively, in Lueck, the Court makes a reference to waiver:  "[S]tate-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." At 213. However, especially in light of later statements, we do not read this language as saying starkly that rights which can be waived are automatically preempted; rather, we think it is the independent existence of the rights, not their waivability, that has significance.

In fact, in holding that a Maine severance pay statute was not preempted, the Supreme Court has said, in effect, that negotiability enhances the case against preemption:  "[T]hat the parties are free to devise their own severance pay arrangements, however, strengthens

the case that the statute works no intrusion on collective bargaining." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 22 (1987). Finally, in yet another footnote in Lingle, we find the following rather confusing statement:

Petitioner points to the fact that the Illinois right to be free from retaliatory discharge is nonnegotiable and applies to unionized and nonunionized workers alike. While it may be true that most state laws that are not pre-empted by sec. 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures nonpre-emption. It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be pre-empted by sec. 301. Similarly, if a law applied to all state workers but required, at least in certain instances, collective-bargaining agreement interpretation, the application of the law in those instances would be pre-empted. Conversely, a law could cover only unionized workers but remain unpre-empted if no collective-bargaining agreement interpretation was needed to resolve claims brought thereunder.

Lingle, at 408 n.7. We are not convinced that whether a right is negotiable or not provides any sort of bright line between claims that are preempted and those which are not. It does not comport with federal labor policy to have one rule for union members and another for the rest of the work force. A state cannot be allowed to penalize or burden the right to collective bargaining. In Livadas, the result did not turn on the parties' inability to contract around state statutes, but rather the state's neutrality as between unionized and nonunionized workers.

Our conclusion that the claim pursuant to the state law lien is not preempted is, we think, based on a fair interpretation of the cases. However, perhaps we could have saved ourselves the trouble and rested on dicta in a footnote in Lingle, which sums up what we are saying:

A collective-bargaining agreement may,

of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted. As we said in Allis-Chalmers Corp. v. Lueck, 471 U.S., at 211, "not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by sec. 301 . . . . ."

Lingle, at 413 n.12 (emphasis added) (citation omitted).

To require that for preemption to exist, resolution of a claim must require interpretation of a CBA, not a mere glance at it, is consistent with recent cases in this circuit and in other circuits. Looking to the facts before us in Atchley v. Heritage Cable Vision Associates, 101 F.3d 495, 502 (7th Cir. 1996), we held that the Indiana wage payment statute was preempted, but we cautioned:

Our opinion today does not mean that whenever a collective bargaining agreement exists interpretation of that agreement always will be required in connection with the Indiana wage payment statute and that the statute always will be preempted by sec. 301.

See also United States v. Palumbo Bros., 145 F.3d 850 (7th Cir. 1998). Other circuits require the same case-by-case analysis of the state-law claim as it relates to the CBA. As one would expect in case-by-case analysis, in some situations preemption is found and in others it is not. A sampling of cases finding preemption includes Firestone v. Southern California Gas Co., 219 F.3d 1063 (9th Cir. 2000) (California fair

labor provision preempted because the claim required interpretation of the CBA), and Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40 (1st Cir. 1997) ( preemption of claims based on a statute which contained a proviso that if the rights created by statute were inconsistent with a CBA, the agreement would prevail). In other cases, there was no preemption: Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102 (9th Cir. 2000) (California wage law not preempted); Voilas v. General Motors Corp., 170 F.3d 367 (3rd Cir. 1999) (fraud claim not preempted); Owen v. Carpenters' Dist. Council, 161 F.3d 767 (4th Cir. 1998) (wrongful discharge claim survives); Foy v. Pratt & Whitney Group, 127 F.3d 229 (2nd Cir. 1997) (misrepresentation and unfair trade practices claims allowed to proceed);Hernandez v. Conriv Realty Assoc., 116 F.3d 35 (2nd Cir. 1997) (state breach of contract claims based on a contract other than the CBA not preempted even though CBA would dictate the rate of pay).

In summary, the overriding principle is that for preemption to apply, interpretation of the CBA and not simply a reference to it is required. If the entitlement to wages (or other employee pay) or the amount due were at issue, the CBA would control; almost certainly, interpretation of the agreement would be necessary and would be subject to the arbitration procedures in the contract. So as to that determination, preemption would apply. The mechanic's lien, however, is a benefit provided to workers based on a state policy protecting workers; it is a separate claim, not dependent on interpretation of the agreement for its existence even though the amount of the pay is dependent on the CBA. In this situation, the claim is not preempted.

Accordingly, the decision of the district court is REVERSED. This case is REMANDED for the entry of judgment in favor of the plaintiffs.

Bauer, Circuit Judge, joined by Flaum, Chief Judge, Coffey, Ripple, and Kanne, Circuit Judges, dissenting. I respectfully dissent. Ours is still the

sole Circuit to address whether a state's mechanic's lien law is preempted by sec. 301 of the Labor Management Relations Act of 1947, 29 U.S.C. sec. 185(a), and although alone on the matter, we have given it much attention. Two panels of this Court and the en banc panel have eyed it, and this dissent takes one more look. I agree with the majority that the applicable legal principles are far "easier to mouth than to apply," ante at 5, but I disagree with the majority's application. I would uphold the vacated panel opinion in this case and would decline to reverse In re Bluffton Castings Corp., 186 F.3d 857 (7th Cir. 1999).

Lingle v. Norge Div. of Magic Chef, Inc. instructs that sec. 301 "governs claims founded on rights created by [CBAs], and also claims 'substantially dependent on analysis of a [CBA].'" 486 U.S. 399, 410 n.10 (1988). Our opinion in Bluffton rephrased the test as follows: "Various circuits, including this one, have recognized that a claim may be preempted under the LMRA either because it depends on interpretation of the CBA or because the claim is founded on the CBA." 186 F.3d at 862 (citations omitted). So, pre emption applies, first, if the right is created by state law and interpretation of the CBA is required or, second, if the claim is founded directly on rights created by the CBA. I do not believe that Bluffton stated these legal principles too broadly.

I am convinced that preemption applies because the employees' claims are founded on rights created by the CBA. The interpretation prong has been generally applied when independent state rights are implicated, such as tort actions, which require some interpretation of the CBA to resolve. When a cause of action is created by state law, independent of the CBA, a court must determine whether the CBA needs to be interpreted or if a quick look is enough. See Loewen Group Int'l, Inc. v. Haberichter, 65 F.3d 1417, 1421 (7th Cir. 1995). The employees here seek unpaid vacation pay owing to them only under the CBA, which Bentz failed to pay because it went bankrupt. This means, simply put, that for whatever reason, including lack of funds, Bentz breached its contract with its employees. The employees seek to enforce the CBA, and

therefore their claims are wholly founded on rights created by the CBA. This is not a case in which the employees seek enforcement of a state right independent of the CBA. As the majority notes, federal law preempts a claim for breach of a CBA. See ante at 4. Since the employees' claims are founded on the CBA, the interpretation prong is not implicated, and the employees' state mechanic's liens are preempted.

Section 301 "creates a federal remedy for the breach of a [CBA]. The remedy is exclusive; no action to enforce such an agreement may be based on state law." National Metalcrafters v. McNeil, 784 F.2d 817, 823 (7th Cir. 1986). A state mechanic's lien does not create an independent right to vacation pay; rather it is merely a remedial vehicle used to enforce the underlying claim to vacation pay. The employees' claim for vacation pay is founded on the CBA. Since the underlying claim to vacation pay is a federal one, the employees' attempt to enforce their rights under the CBA via a state mechanic's lien runs full tilt into the barriers of federal law.

The majority writes, "[i]f the entitlement to wages (or other employee pay) or the amount due were at issue, the CBA would control; almost certainly interpretation of the agreement would be necessary and would be subject to the arbitration procedures in the contract. So as to that determination, preemption would apply." Ante at 10; see ante at 5. The majority further says that if the amount owing was disputed the dispute "would be resolved in the appropriate way--arbitration followed by confirmation, or a direct 301 suit in federal court if arbitration is not called for in the CBA." Ante at 6. It is true that the amount of vacation pay owing to employees here is not disputed; nevertheless, a state mechanic's lien is not the appropriate collection remedy. Regardless of whether the amount due is disputed or not, preemption applies because the employees are seeking to enforce the CBA. The CBA in this case calls for disputes to be resolved through arbitration.

The parties have stipulated to the amount owing to employees. The majority says that since there is no dispute over

the amount, no interpretation of the CBA is required, so preemption does not apply. Whether the CBA needs to be interpreted is not the question; no matter how phrased the rights to be enforced are founded on the CBA. In the end, the rule adopted by the majority will encourage employers to avoid liability by simply disputing the amount owed under the CBA. Cf. Antol v. Esposto, 100 F.3d 1111, 1123 (3d Cir. 1996) (Mansmann, J., dissenting). This may well encourage artificial disputes between employers and employees, which would buck the purpose of the labor laws created to maintain harmony between the parties.

While it is true that the reasoning and result urged by this dissent would have the effect of treating unionized and nonunionized workers differently, this treatment should not be legally offensive; unionized workers have voluntarily bargained to be treated differently by entering into the CBA and agreeing to arbitral remedies to resolve any breach of the CBA. This means that secured creditors would maintain their priority position, which, again, is not an offensive result. While the employees' situation is a sympathetic one, both the case and statutory law require this result. Side- stepping the law to reach an equitable result in what is a contract claim I do find legally offensive. I would affirm.